UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOUHAILA JAWAD,

    Plaintiff                                     Civil Action No. 06-13971

v.                                             HON. VICTORIA A. ROBERTS
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Souhaila Jawad brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability insurance benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be granted, and that Plaintiff's Motion for Summary Judgment be denied.

## PROCEDURAL HISTORY

On November 4, 2003, Plaintiff filed an application for benefits, alleging an onset date of August 7, 2001 (Tr. 50-52). After the denial of her claim, Plaintiff filed a request for an administrative hearing, held on March 29, 2006 in Detroit, Michigan before

Administrative Law Judge (ALJ) Kathryn D. Burgchardt. Plaintiff, represented by attorney G. Bimberg, testified, as did Vocational Expert ("VE") Jennifer Turecki (Tr. 204-214, 214-218). On April 26, 2006, ALJ Burgchardt found that Plaintiff was not disabled because although unable to perform her past relevant work as a stocker, she retained the residual functional capacity to perform a significant range of work at the medium exertional level (Tr. 17). On November 23, 2004, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on September 8, 2006.

## BACKGROUND FACTS

Plaintiff, born July 5, 1952, was age 53 when the ALJ issued his decision (Tr. 18, 50). She denies all formal education and worked previously as a stocker (Tr. 68, 73). Plaintiff's application for benefits alleges disability to due to arthritis of the neck, hand, and knee, and a pinched nerve (Tr. 67).

### A. Plaintiff's Testimony

*Prior to Plaintiff's testimony, her attorney informed the ALJ that the onset of disability date had been changed from August 7, 2001 to July 5, 2002 (Plaintiff's 50th birthday)* (Tr. 203).

Plaintiff, testifying through an interpreter, confirmed a birth date of July 5, 1952 (Tr. 204). She confirmed that she currently experienced arthritis, chest pain, and neck pain (Tr. 204). She alleged that both sitting and standing created discomfort, estimating that she could remain in a sitting or standing position for no more than one hour (Tr. 204-205). She reported that when taking her medication, she could lift up to ten pounds, adding that her

lifting abilities were compromised by hand tremors (Tr. 206).

Plaintiff indicated that she was unable to read in either her native language or English, stating that she had only received two years of education in Lebanon (Tr. 206). Denying that she understood even simple math, Plaintiff testified further that she was unable to drive (Tr. 206). She reported that she had seven children and 12 grandchildren, but indicated that her condition precluded her from babysitting, adding that her adult children checked on her regularly, including a son living on the same street (Tr. 207-208). She stated that she soaked in a hot tub regularly to relief symptoms of arthritis (Tr. 208). Plaintiff admitted smoking one pack of cigarettes each day but denied using alcohol (Tr. 208). *Plaintiff's attorney interjected that she sought regular treatment from a local medical clinic* (Tr. 209).

Plaintiff reported her work as a stock person, lasting from 1992 to 2001, consisted of cleaning out and restocking refrigerators at a service station (Tr. 210). She indicated that presently, she typically arose at 11:00 a.m., then dressed and groomed herself (Tr. 210). She testified that she was able to place clothes in the washing machine, but relied on her daughter, 18, to fold them. She added that the same daughter, who continued to live with her, also helped her grocery-shop (Tr. 210-211). Plaintiff, admitting that she continued to cook on a limited basis, indicated that her condition obliged her to prepare more complicated dishes in increments, allowing herself rest periods (Tr. 211). She denied performing any yard work, testifying that both lawn care and snow removal tasks were performed by her children (Tr. 212).

Plaintiff opined that she was unable to perform the stock position due to arthritis pain,

alleging further that discomfort prevented her from sleeping (Tr. 212). She volunteered that medication prescribed for depression allowed her "to forget about [her] pain" (Tr. 213). She also reported shortness of breath and a racing pulse two to three times a day (Tr. 213). Plaintiff estimated that pain and fatigue obliged her to lie down for approximately three hours every day (Tr. 214).

### B. Medical Evidence

#### i. Treating Sources

In September 1999 imaging studies of Plaintiff's heart showed that it appeared "borderline in size" (Tr. 155). In January 2002, Plaintiff sought emergency treatment after experiencing substernal chest burning which subsided while undergoing tests to rule out cardiac arrest (Tr. 128). Hospital records note that Plaintiff smoked heavily, but denied alcohol use (Tr. 128). Samer Salka, M.D., diagnosed Plaintiff with gastroesophageal reflux (Tr. 129). A radiological report indicated that the study of Plaintiff's chest had been "slightly limited by poor inspiratory effort" (Tr. 135).

In September 2002, Plaintiff again sought emergency treatment after experiencing chest pains as well as evidence of rectal blood (Tr. 145). An EKG showed the absence of arrhythmias (Tr. 148). Plaintiff was scheduled for a colonoscopy the following month (Tr. 153). February 2003 imaging studies of Plaintiff's left shoulder showed "some arthritic degeneration," while a cervical spine study revealed "lower cervical spondylosis involving C6-C7 (Tr. 197). Studies performed of the spine the next month showed "no focal disc protrusion" (Tr. 195). October 2003 imaging studies of Plaintiff's abdomen showed a normal

bowel gas pattern (Tr. 169). The same month, Plaintiff reported neck, back, head pain, and depression (Tr. 162).

Result of an April 2004 EMG of the lower extremities were "within normal limits" (Tr. 192). October 2004 imaging studies of the lumbosacral spine showed mild degenerative changes "without evidence of acute fracture or spondylolisthesis" (Tr. 188). In July 2005, imaging studies of Plaintiff's chest showed "[i]nterval improvement of the atelectasis at the lung bases" with "no evidence of a focal infiltrate or overt cardiac decompensation" (Tr. 184). In August 2005, Plaintiff underwent testing after complaining of arm, leg, and face numbness, which showed "[n]o significant stenosis of either internal carotid artery" (Tr. 180). In November 2005, an echocardiogram showed normal results with the exception of a slightly dilated left atrium (Tr. 175). The next month, a colonoscopy report noted that the test's accuracy had been compromised by "poor preparation," also noting the presence of inflamed hemorrhoids (Tr. 172).

### ii. Consultive Sources

A February 12, 2004 DDS consultation form, noting that Plaintiff alleged disability as a result of arthritis in the hands, back, and knees, a pinched nerve, thyroid problems, memory problems and claustrophobia, indicated that she had been treated for high blood pressure, peptic ulcer disease and hypothryroidism, also noting that imaging studies performed in September 2002 showed "moderate aortic insufficiency" (Tr. 170). The report concluded by pointing out that Plaintiff had failed to show up for two consultive examinations scheduled by the SSA (Tr. 170).

### C. Vocational Expert Testimony

VE Jennifer Turecki classified Plaintiff's previous work as a stocker as unskilled, at the heavy level of exertion (Tr. 215). The ALJ posed the following question:

> "Please assume an individual the same age, education and work experience as Ms. Jawad. Further assume that this individual could only lift or carry 25 pounds frequently and 50 occasionally. The individual could stand or walk with normal breaks for a total of six hours in an eight hour work day. The individual could sit with normal breaks for a total of six hours in an eight hour work day. The individual could perform pushing and pulling motions with upper and lower extremities within the weight restrictions given. The individual could perform postural activities but only occasionally and that would be climbing, balancing, stooping, crouching, kneeling and crawling. The individual could perform overhead reaching but it would be limited to occasionally. The individual could not climb any ladders, ropes or scaffolds. The individual could not be in a job which required communicating in English or performing math. Oh, could this individual return to past work?"

(Tr. 214-215).

The VE found that given the above limitations, Plaintiff could not perform her past relevant work, but could perform the unskilled, exertionally light or medium work of a packer (3,500 light and 5,000 medium jobs existing in the regional economy), sorter (2,000), and inspector-checker (1,800) (Tr. 216). The VE testified that if all of Plaintiff's allegations were credited, she would be precluded from all work (Tr. 218).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Burgchardt determined that Plaintiff experienced the severe impairments of arthritis of the hands, back, and knees; gastroesophageal reflux disease ("GERD") with chest pain; and hypothyroidism, finding however none of the impairments met or medically equaled one of the listed impairments

found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 14-15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for exertionally medium work, limited her to occasional balancing, stooping, crouching, kneeling, crawling, and overhead reaching; along with a preclusion on climbing of ladders, ropes, or scaffolds; speaking English. and performing math (Tr. 15). Adopting the VE's job findings, the ALJ found further that although Plaintiff was unable to perform her past relevant work, she could perform the work of a packer, sorter, and inspector (Tr. 16-17).

The ALJ supported her non-disability determination by stating that she did not find Plaintiff "entirely credible," noting that her allegations of the "intensity, duration, and limiting effects" of her symptoms were not borne out by her medical records (Tr. 15-16). The ALJ also commented that Plaintiff missed two consultive exams scheduled by the SSA, despite the fact that Plaintiff's adult children visited her daily and provided regular transportation (Tr. 16).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Mental Conditions

Plaintiff argues first that the ALJ impermissibly failed to consider whether depression, claustrophobia, and memory problems contributed to her disability. *Plaintiff's Brief* at 14-15. Citing 42 U.S.C. §421, she contends that given the presence of mental disorders, the ALJ committed reversal error by failing to complete a Psychiatric Review Technique ("PRTF"). *Id.*

"When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly." *Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1048 (10th Cir.1993)(internal citations omitted); 20 C.F.R. § 404.1520a. However, the Sixth Circuit has held that although "[t]he ALJ's failure to complete a Psychiatric Review Technique Form can constitute reversible error . . . reversal is warranted only if the plaintiff shows significant evidence of a possible impairment that allegedly prevented the Plaintiff from working." *Robinson v. Barnhart,* 124 Fed.Appx. 405, 411, 2005 WL 513492, *6 (6th Cir. 2005); *Marcum v. Commissioner, SSA,* 205 F.3d 1341, 2000 WL 92262 *4 (6th Cir. 2000). *See also Owen v. Chater,* 1997 WL 251918, *4 (6th Cir. 1997) ("[W]here a claim of mental impairment arises for the first time in proceedings before the ALJ, the ALJ would have an obligation to consult a mental health expert before completing the PRTF if the

claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment.").

While the transcript contains scattered references to the fact that Plaintiff may have experienced depression or other mental limitations, none of these isolated comments gives rise to a reasonable inference that Plaintiff suffered from a mental illness which would limit her work abilities. Plaintiff premises her argument that a PRTF was required on the fact that February 12, 2004 SSA contact notes indicate that Plaintiff alleged memory problems and claustrophobia. However, her initial application for benefits, created November 4, 2003, alleges disability only as a result of physical limitations[1] (Tr. 67). Plaintiff's daughter claimed in December 2003 that Plaintiff experienced claustrophobia; however, the only practical limitation alleged was that Plaintiff demanded that the windows stay open when riding in a car (Tr. 102). The same daughter admitted that Plaintiff had neither received nor been referred for mental treatment (Tr. 102). Although October 2003 examination notes comment that Plaintiff reported intermittent depression, her medical records show a complete absence of mental health treatment, despite the fact that Plaintiff sought treatment for physical ailments on a frequent basis (Tr. 162).

Next, I disagree with Plaintiff's argument that her statement at the hearing– "depression medication 'relaxes me and makes me forget about my pain'"– should

---

[1] At the bottom of the same page, however, Plaintiff states that her work stoppage was precipitated by her husband's death, alleging that the event's trauma created disorientation, memory loss, and claustrophobia (Tr. 67).

necessarily have alerted the ALJ that she alleged mental, along with physical limitations. Plaintiff's statement was made in response to the ALJ's query as to her level of pain, suggesting that she used anti-depressants as periodically prescribed to quell bouts of pain as a result of arthritis, rather than to treat mental health problems (Tr. 213). Further, although Plaintiff's counsel made both opening and closing statements which discussed Plaintiff's allegations disability as a result of arthritis, heart problems, and spondylolisthesis, he omitted any mention of disability resulting from mental conditions (Tr. 212, 219).

While Plaintiff's lack of education and inability to read in either her native language or English might lend itself to the inference that she would be unable to convey the full extent of her limitations, in fact, she was represented by counsel who made both opening and closing statements, and was allowed to testify through an interpreter. Plaintiff's daughter and daughter-in-law both attended the hearing as observers. The transcript record reflects that her attorney, obviously mindful of chances to optimize her claim for benefits, changed her original onset of disability date from August 7, 2001 (the day of her husband's death) to July 5, 2002 (Plaintiff's fiftieth birthday) (Tr. 50, 202-203). Despite legal representation and extensive family support, the analysis of Plaintiff's claim, if hindered at all, was as a result of her own failure to report for two scheduled consultive exams which presumably would have alerted state examiners to the extent of her mental as well as physical limitations (Tr. 170).

Finally, I note that the transcript contains no evidence that Plaintiff's counsel raised the argument that the ALJ impermissibly omitted her mental limitations before the Appeals

Council prior to filing suit in this Court.[2] *See Lance v. Commissioner of Social Sec.*, 72 F.3d 129, 1995 WL 723160, *1 (6th Cir.1995); *Hix v. Director, OWCP,* 824 F.2d 526, 527 (6th Cir.1987). (An "issue not raised before the Appeals Council cannot be considered by the courts").

### B. Hypothetical Question

Plaintiff also submits that the ALJ also commit reversal error by composing a hypothetical question which failed to incorporate the full extent of her limitations. *Plaintiff's Brief* at 17-18. In addition to the omission of her alleged mental limitations, Plaintiff contends that the ALJ's hypothetical question did not reflect her true degree of physical limitations, which she submits precluded all work at the medium exertional level. *Id.*

In *Varley v. Secretary of Health & Human Services,* 820 f.2d 777, 779 (6th Cir. 1987) the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted). Although the hypothetical question need not contain a list of all Plaintiff's Step Two impairments, the question must nonetheless incorporate limitations created by plaintiff's conditions. *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 631-

---

[2]Plaintiff's counsel submitted a Request for Review of Hearing Decision/Order form on May 3, 2006, but the transcript contains no evidence to indicate that he raised the present issue except to reiterate the general claim that Plaintiff was "totally disabled and unable to engage in any substantial activity" (Tr.7- 8).

632 (6th Cir. 2004).

In the present case, the hypothetical question prompting the VE's finding that Plaintiff could perform medium work, is amply supported by record evidence. Beyond Plaintiff's own allegations that her condition limited her to light household tasks performed on an intermittent basis, the record contains a dearth of material to support the contention that she was unable to perform exertionally medium work. The ALJ noted that while Plaintiff complained of chest pain, imaging studies performed since the alleged onset of disability showed the absence of "active pulmonary disease" and that imaging studies of the spine showed "minimal" or "mild" degenerative changes (Tr. 16). Further, although the record contained only modest support for postural limitations, in an abundance of fairness, the ALJ took into account possible limitations as a result of arthritis by restricting Plaintiff to occasional climbing, balancing, stooping, crouching, kneeling and crawling, along with a preclusion on climbing ladders, ropes, or scaffolds (Tr. 215).

I note that in particular, more recent medical records further confirm that Plaintiff did not experience a greater level of limitation than that found by the ALJ. October 2004 imaging studies of Plaintiff's spine showed only mild degenerative changes (Tr. 188). In November 2005, an echocardiogram showed a slightly dilated left atrium but otherwise normal results. Although Plaintiff, a long term heavy smoker, complained of shortness of breath, EKG testing showed the absence of arrhythmia (Tr. 148). Symptoms from GERD appeared to be intermittent rather than constant and Plaintiff herself acknowledged obtaining

a degree of pain relief from medication (Tr. 206). Accordingly, the ALJ's hypothetical question, well supported by substantial evidence, fails to present grounds for remand.

### C. Sentence Six Remand

In closing, I note that Plaintiff has asked additionally for a remand on the basis of new material which would support her disability claim. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." Under the sixth sentence of 42 U.S.C. §405(g), this Court may consider the additional evidence only for purposes of determining whether remand is appropriate. However, I am unable to analyze this claim in light of the fact that Plaintiff has not presented *any* records to either the Appeals Council or this Court to support her request for a Sentence Six remand.

This Court notes that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments or personal misfortunes. However, despite the fact that the ALJ's task of reviewing evidence was particularly onerous as a result of Plaintiff failure to submit to consultive exams, she conducted an even-handed and thorough analysis of the record. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be

disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
　　　　　　　　　　　　　　　　　R. STEVEN WHALEN
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated: June 26, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 26, 2007.

　　　　　　　　　　　　　　　　　S/Gina Wilson
　　　　　　　　　　　　　　　　　Case Manager