UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOUHAILA JAWAD,

               Plaintiff(s),         CASE NUMBER: 06-13971
                                                HONORABLE VICTORIA A. ROBERTS
v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant(s).
_____/

ORDER

**I.    INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge R. Steven Whalen recommends that the Court GRANT Defendant's motion (Doc. #10) and DENY Plaintiff's motion (Doc. #9). The Court **ADOPTS** Magistrate Whalen's recommendation (Doc. #12).

**II.    PROCEDURAL HISTORY AND FACTS**

Magistrate Whalen adequately summarizes the relevant facts and procedural history. His summary is incorporated here.

**III.    STANDARD OF REVIEW**

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the ALJ's decision to determine whether it is supported by "substantial evidence." "Substantial evidence is more than a

1

scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This standard presupposes that there is a "zone of choice" within which the Administrative Law Judge ("ALJ") may make a decision without being reversed. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations. *Id.*

**IV.    ARGUMENTS**

There are five factors that the Social Security Administration uses to determine eligibility for benefits. Plaintiff has the burden on the first four and must establish that: (1) she is not presently engaged in gainful employment; and (2) she suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; or (4) she did not have the "residual functional capacity" ("RFC") to perform past work. *Jones v. Comm'r of Soc. Security*, 336 F.3d 469, 474 (6th Cir. 2003).

If the Plaintiff satisfies her burden, the burden shifts to the Commissioner for the

fifth factor to show that there is other work available in the economy that the claimant can perform. 20 C.F.R. §§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

### A. Plaintiff's Claims

Plaintiff Souhaila Jawad seeks disability benefits from July 5, 2002, claiming disability due to arthritis. Plaintiff's past work experience includes employment as a stock person at a service station.

Plaintiff claims her arthritis pain comes and goes. Tr. 212. Plaintiff claims she is in pain when she is sitting, standing, or walking too much. Tr. 204, 213. Plaintiff states that she can sit for an hour and stand for almost an hour before the pain becomes "unbearable." Tr. 204-205. When she walks, her back, knees, and all of her bones hurt. Plaintiff claims she must walk to the corner "really, really slow" to bear the pain. When she walks to her son's house--three houses away--she gets tired. Tr. 214.

Plaintiff also claims she has chest and neck pain. Tr. 204. She has a closed artery and dryness around her heart. Plaintiff states her heart races every 15 minutes and beats fast every half hour. She cannot breathe two or three times a day when her chest races and closes in. Tr. 213.

Plaintiff states she takes depression medication that relaxes her to the point where she forgets about the pain. Tr. 213. Her medication puts her to sleep for three

3

hours. Tr. 205. Plaintiff also goes to the pool to relieve her pain. Tr. 208. Plaintiff claims that she lies down on a daily bases for three hours because her body aches. Tr. 213-214.

Plaintiff testified that despite her pain, she can do the following: (1) lift a gallon of milk when she has taken her medication; (2) dress; (3) wash clothes (although her daughter has to fold them); (4) go grocery shopping (although she gets tired and sometimes sits in the car while her daughter does the shopping); (5) cook Arabic food, but she has to sit down and rest if it takes too long; and (6) put the dishes in the dishwasher. Tr. 205-206, 210-211. Plaintiff states her pain prevents her from cleaning the house, doing yard work, and shoveling the snow. Tr. 211-212.

Plaintiff also testified that she cannot read in either English or her native language (Arabic), drive, or do simple math. Further, sometimes Plaintiff shakes when she picks up a piece of paper. Tr. 206. And, she smokes a pack of cigarettes a day. Tr. 208.

### B. Magistrate's Recommendation

To determine the range of suitable alternative jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience who can lift or carry 25 pounds frequently and 50 pounds occasionally; stand, walk, and sit with normal breaks for a total of six hours in an 8-hour work day; perform pushing and pulling motions with upper and lower extremities within weight restrictions; perform postural activities occasionally, including climbing, balancing, stooping, crouching, kneeling, and crawling; perform overhead reaching occasionally; cannot climb any ladders, ropes, or scaffolds; and cannot

4

perform a job that requires communicating in English or performing math. Tr. 214-215. Based upon this hypothetical, the VE testified that such an individual could not perform Plaintiff's past job. The VE testified that such individual could work as a light-level packer (3,500 jobs regionally), medium-level packer (5,000 jobs regionally), sorter (2,000 jobs regionally), or inspector-checker (1,800 jobs regionally). Tr. 216.

The hypothetical was modified to include a limitation of lifting and carrying 10 pounds frequently and 20 pounds occasionally. The VE testified that the sorter, inspector-checker, and light-level packer jobs remained the same, but the medium-level packer job was eliminated. Tr. 217.

Plaintiff's attorney asked the VE to imagine an individual who can only sit up to an hour, stand for about the time it takes to wash dishes, must lie down on a daily basis for up to three hours, has severe chest pain and tightness that comes and goes throughout the day at unpredictable times, can lift five pounds at most, and whose heart races. The VE testified that these limitations are work preclusive. Tr. 218.

The ALJ determined that Plaintiff's arthritis in her hands, back, and knees; gastroesophageal reflux disease (GERD) with chest pain; and hypothyroidism were "severe" based on the requirement in 20 C.F.R. §404.1520(c). The ALJ also found that Plaintiff's hypertension was a non-severe impairment. In addition, the ALJ stated that Plaintiff's impairments have more than a minimal effect on her capacity to perform basic work activities. Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. She concluded that Plaintiff retains the RFC to lift and/or carry 25 pounds frequently and 50 pounds

5

occasionally (from very little, up to 1/3 of an 8-hour work day); sit, stand, and/or walk with normal breaks for a total of six hours in an 8-hour work day; perform pushing and pulling motions with the upper and lower extremities within weight restrictions; and occasionally balance, stoop, crouch, kneel, crawl, and reach overhead. She cannot climb ladders, ropes, or scaffolds. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are a significant number of jobs in the national economy that Plaintiff can perform. Hence, the ALJ concluded that Plaintiff was not under a "disability" as defined in the Social Security Act.

The Magistrate recommends that the Court affirm the ALJ's decision. He states the ALJ was correct in finding that the Plaintiff did not have any mental impairments, even though she never completed the Psychiatric Review Technique Form ("PRTF"). The Magistrate recognized the following: (1) the hearing transcript contains "scattered references" to the fact that Plaintiff may have depression or other mental limitations; (2) Plaintiff testified that her "medication for depression" relaxes her and makes her forget about her pain; (3) Plaintiff's initial application for benefits alleges that after her husband's death she experienced disorientation, memory loss, and claustrophobia; (4) Plaintiff's daughter stated Plaintiff experienced claustrophobia; and (5) Plaintiff's examination notes comment that she reported intermittent depression. However, the Magistrate concluded this evidence did not rise to an inference that Plaintiff suffers from a mental illness, or alert the ALJ that Plaintiff alleged mental, along with physical, limitations. According to the Magistrate, Plaintiff sought treatment for physical ailments on a frequent basis, but her medical records show a complete absence of mental health treatment. Plaintiff's daughter gave a history that Plaintiff must have the windows down

when riding in a car, and the same daughter acknowledged that Plaintiff neither received nor was referred for mental health treatment. Further, the Magistrate stated Plaintiff used the depression medication to ease arthritis pain, rather than to treat mental health problems.

The Magistrate asserts that if Plaintiff had attended two scheduled consultation examinations, state examiners could have determined the extent of her mental and physical limitations. The Magistrate stated that there was no excuse for Plaintiff's absence from the examinations because she had legal representation and extensive family support. The Magistrate also noted that Plaintiff's attorney failed to mention any mental disability in either his opening statement or closing argument.

In his analysis, the Magistrate cited *Marcum v. Commissioner, SSA*, 2000 WL 92262 (6th Cir. Jan. 18, 2000); *Owen v. Chater*, 1997 WL 251918 at *4 (6th Cir. May 13, 1997) ("[w]here a claim of mental impairment arises for the first time in proceedings before the ALJ, the ALJ would have an obligation to consult a mental health expert before completing the PRTF if the claimant brings forth sufficient evidence to raise an inference that [she] suffers from a mental impairment"); and *Robinson v. Barnhart*, 124 Fed.Appx. 405, 411 (6th Cir. March 3, 2005) ("The ALJ's failure to complete a [PRTF] can constitute reversible error, but in the Sixth Circuit, reversal is warranted only if the plaintiff shows 'significant evidence of a possible impairment that allegedly prevented the Plaintiff from working'") (quoting *Marcum*, 2000 WL 92262 at *4).

Noteworthy, the Magistrate stated that Plaintiff's attorney submitted a Request for Review of Hearing Decision/Order form on May 3, 2006 to the Appeals Council prior to filing suit in this Court. However, the Magistrate noticed that Plaintiff's attorney did not

argue that the ALJ impermissibly omitted Plaintiff's mental limitations. *See Hix v. Director, OWCP*, 824 F.2d 526, 527 (6th Cir. 1987) ("[u]nder the exhaustion of remedies doctrine, a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal") (citing *Cox v. Benefits Review Board*, 791 F.2d 445, 447 (6th Cir. 1986) and *Blevins v. Director, OWCP*, 683 F.2d 139, 143 (6th Cir. 1982)).

The Magistrate also contends that the ALJ's hypothetical question was well supported by substantial evidence. The Magistrate states that the record only contains modest support for postural limitations, but the hypothetical question addressed an individual who was restricted to occasional climbing, balancing, stooping, crouching, kneeling, and crawling; along with a preclusion on climbing ladders, ropes, and scaffolds. The Magistrate also states that besides Plaintiff's own allegations that her condition limited her to light household tasks performed on an intermittent basis, there is little evidence to support the contention that Plaintiff was unable to perform exertionally medium work. The Magistrate noted that more recent medical records confirm that Plaintiff did not experience a greater level of limitation than that found by the ALJ. For example, imaging studies of Plaintiff's spine in October 2004 showed only mild degenerative changes. Tr. 188.

### C. Plaintiff's Objections

#### 1. Mental Impairments

Plaintiff seeks remand. Plaintiff argues that the ALJ improperly failed to consult a

8

psychiatrist or psychologist to determine if she could work despite her mental limitations before completing her RFC assessment. Plaintiff also argues that the ALJ should have completed a PRTF because she alleged depression, claustrophobia, and memory problems.

In support of her argument, Plaintiff contends that the administrative record contains more than "scattered references" to the fact that she may have mental health impairments. Plaintiff cites Section 2(J) of the Disability Report - Adult dated November 9, 2003 where she indicated that she is disoriented, weak, and has trouble remembering. It also states that she is very claustrophobic. Tr. 67. Plaintiff also cites paragraph 32 of the Michigan Disability Determination Service Function Report - Adult dated December 10, 2003 where it indicated that Plaintiff forgets things told to her five minutes previously. Tr. 91. Further, Plaintiff states that the Social Security Administration ("SSA") representative had a conversation with Plaintiff's daughter on December 10, 2003, who indicated that Plaintiff wants the window down when she is in a car because she "wants air" and does not like "closed places." Plaintiff submits that this is consistent with claustrophobia. Plaintiff also submits that her daughter indicated that Plaintiff has memory problems. In addition, Plaintiff claims she confirmed her mental impairments in her testimony by describing how her depression medication relaxes her and makes her forget about the pain. Tr. 213.

Plaintiff argues that the unpublished cases cited by the Magistrate are distinguishable, non-binding case law that does not abrogate the Commissioner's responsibility to "ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable [RFC] assessment." 42 U.S.C.

9

§421(h). Plaintiff claims *Marcum v. Commissioner, SSA*, 2000 WL 92262 (6th Cir. Jan. 18, 2000) is different from her case because the claimant in *Marcum* submitted a mental health disability claim based solely upon a sleep disorder. Plaintiff states *Owen v. Chater*, 1997 WL 251918 (6th Cir. May 13, 1997) is distinguishable because the *Owen* Court had medical evidence stating the blood flow to plaintiff's brain was normal, which supported its position that he did not have depression caused by an abnormal blood flow to the brain. Similarly, Plaintiff states *Robinson v. Barnhart*, 124 Fed.Appx. 405 (6th Cir. March 3, 2005) is different from her case because the *Robinson* Court had an IQ test to prove that plaintiff's intelligence level did not indicate severe mental impairment.

Plaintiff argues that her position is supported by case law from other circuits. *See Montgomery v. Shalala*, 30 F.3d 98 (8th Cir. 1994); *Plummer v. Apfel*, 186 F.3d 422 (3rd Cir. 1999); and *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1049 (10th Cir. 1993) ("[t]he ALJ complied with the social security regulations, but not with the statutory requirement to make every reasonable effort to ensure that a qualified psychologist or psychiatrist completes the [RFC] assessment") (citing 42 U.S.C. §421(h)).

### 2. Hypothetical Question

Plaintiff contends that the limitations included in the hypothetical questions were not consistent with her testimony and the SSA Exhibits. Specifically, Plaintiff argues that the hypothetical did not account for her mental health disorders, including depression, claustrophobia, and memory problems. *See Walker v. Barnhart*, 258 F.Supp.2d 693, 701-02 (E.D. Mich. 2003) (holding that remand was warranted because

the ALJ failed to inform the VE of his finding that the claimant suffered from a mental condition); *see also Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994) (noting that the magistrate judge found that the ALJ presented an inadequate hypothetical question to the VE because it "did not adequately incorporate plaintiff's emotional impairments . . . and the combined effect of his physical and emotional impairments had to be reconsidered.").

Plaintiff also argues that a remand is proper because the hypothetical failed to account for her physical exertional impairments. Plaintiff states she testified that she could only sit for one hour, stand for less than one hour, was severely limited in lifting, had to rest 3-4 hours on a daily basis after taking her medication, and had to rest during the day for up to three hours. Plaintiff argues that these limitations were either not mentioned in the hypothetical or inaccurately represented to the VE. For example, Plaintiff states the hypothetical question failed to mention the fact that she must rest during the day. Plaintiff asserts her argument is supported by the VE's testimony that Plaintiff is precluded from work if all the limitations she testified to are true.

### 3. Consultation Examinations

Plaintiff argues her case should be remanded solely because the Magistrate concluded that she was required to undergo consultation examinations. Plaintiff argues that the Social Security Act and its related rules and regulations do not require her to attend consultation examinations. Plaintiff argues that the treating physician is the primary source for medical opinions on whether a claimant meets the SSA requirements to obtain disability benefits. Plaintiff asserts that the ALJ must give "controlling weight" to the opinions of a treating physician if they are supported by medical evidence. And, a

consultation examination is only permitted when the claimant cannot provide sufficient medical evidence for the ALJ to make a determination.  Plaintiff also asserts that the consequence of a claimant failing to attend a consultation examination is an ALJ determination of whether she meets the SSA requirements based upon what medical evidence was submitted–not a denial of benefits.  According to Plaintiff, her failure to attend the consultation examinations is more reason for additional follow-up and development of the record on mental health evidence.

Plaintiff further argues that an evidentiary hearing was required on this issue because it is not clear if she was even aware of the request to attend consultation examinations.  Plaintiff claims she was not represented by legal counsel when the letters were sent, and there is no verification that the letters were in Arabic.

### D. Defendant's Response

Defendant argues that Plaintiff failed to present specific objections to the Magistrate's recommendation that warrant reversal or remand.  Defendant states that Plaintiff's objections are a recapitulation of the arguments made in her brief.  Therefore, Defendant mainly relies on the arguments he made in his reply brief.

However, he argues that the Magistrate's recommendation to affirm the ALJ's decision is well-grounded.  Specifically, Defendant states the Magistrate cannot weigh evidence or make findings of fact.  Defendant argues that the Magistrate can only determine whether the ALJ properly weighed the evidence.  *See Brainard v. Secretary of Heath and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989) ("Judicial review of the [Commissioner's] decision is limited to determining whether the [Commissioner's] findings are supported by substantial evidence and whether the [Commissioner]

employed the proper legal standards in reaching her conclusion") (citing *Richardson v. Perales*, 402 US 389, 401 (1971)).  Because the Magistrate determined that the ALJ applied the correct legal standards and that the decision was supported by substantial evidence, Defendant requests that this Court adopt the Magistrate's recommendation.

## V.     ANALYSIS

### A. Mental Impairments

The *Owen*, *Marcum*, and *Robinson* Courts provide the standard the Sixth Circuit uses to determine if an ALJ committed reversible error by failing to consult a medical professional or failing to complete a PRTF before determining that a claimant does not have mental impairments.  The *Owen* Court stated that the question of whether the ALJ is required to consult a psychiatrist or psychologist before determining that plaintiff did not suffer from a mental disorder "is a question of first impression in [the Sixth Circuit]." *Owen*, 1997 WL 251918 at *4. The Court declined to answer the question.  It only assumed that "[t]he ALJ [has] an obligation to consult a mental health expert before completing the PRTF if the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment." *Id.*  The Court found plaintiff failed to present such evidence.  Plaintiff submitted a letter stating that he "may have visual disturbances and possibly problems with concentration or memory," and that "[i]t is quite possible that he has some form of depression."  The Court held the letter was "purely speculative." *Id.*

In *Marcum*, the plaintiff argued that his case should be remanded because the ALJ failed to complete the PRTF or have him evaluated by a qualified psychiatrist or psychologist before finding no medically determinable mental impairment.  Evaluating

13

his argument, the Court stated, "[t]he critical inquiry is what quantum of evidence of a possible mental impairment is necessary to invoke the requirements of 42 U.S.C. §421(h). . . ." *Marcum*, 2000 WL 92262 at *3. Section 421(h) provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable [RFC] assessment.

The plaintiff's application for benefits in *Marcum* did not claim a disability due to a mental impairment. *Marcum*, 2000 WL 92262 at *3. In addition, the ALJ observed that the plaintiff complained of depression at the hearing, but did not have a history of psychiatric hospitalization, counseling, or psychiatric medication. *Id.* Further, the Court disagreed with plaintiff's argument that the anti-depressant medication he was taking for non-restorative sleep was psychiatric medication. *Id.* at *4. The Court stated that the medication was taken before bed as a sleep aid. Hence, "[d]espite plaintiff's claim that depression was a mental impairment that affected his [RFC], there was not sufficient evidence in the record to raise an inference that plaintiff suffered from a mental impairment." *Id.*

Similarly, the *Robinson* Court held that the ALJ's failure to complete a PRTF did not constitute reversible error because reversal in the Sixth Circuit is only warranted when plaintiff shows "significant evidence of a possible impairment that allegedly prevented the Plaintiff from working." *Robinson*, 124 Fed.Appx. at 411 (quoting *Marcum*, 2000 WL 92262 at *4). In *Robinson*, plaintiff was given a psychological evaluation, which determined that he had a verbal IQ of 81, a performance IQ of 80, and

a full-scale IQ of 80.  *Id.* at 408.  This evidence did not show a significant mental impairment that prevented the plaintiff from working.  The Court stated that to qualify as exhibiting a severe mental impairment, plaintiff either had to prove an issue or IQ of 60 to 70, coupled with physical or other mental limitations.  *Id.* at 411.

Applying this standard to Plaintiff's case, the ALJ did not commit reversible error.  Plaintiff's evidence of a mental impairment includes her and her daughter's indications that Plaintiff takes depression medication, is disoriented and weak, has trouble remembering, and is claustrophobic.  However, Plaintiff did not present medical evidence in support.  Testimony from her and her daughter alone is insufficient evidence to raise an inference that she suffers from a mental impairment.

Further, the cases Plaintiff relies on are distinguishable.  The claimants in these cases presented significant evidence of a possible mental impairment that allegedly prevented them from working.  *See Plummer*, 186 F.3d at 434 (ALJ did not fulfill her duty to explore alleged mental impairment when the record contained several diagnosis of depression, generalized anxiety disorder, psychiatric anxiety disorder, and a prescription for anti-depressants); *Montgomery*, 30 F.3d at 100 (ALJ erred in not completing PRTF when plaintiff was diagnosed with undifferentiated somatoform disorder, had a history of depression, several suicidal thoughts, and one suicide attempt); *Andrade*, 985 F.2d at 1048-49 (ALJ committed reversible error by assessing plaintiff's RFC without the assistance of a qualified psychiatrist or psychologist when there was evidence of major depression, several months of weekly treatment, and a letter offered at the hearing stating plaintiff was "totally mentally disabled.").

### B. Hypothetical Question

Since Plaintiff failed to provide substantial evidence to prove mental impairment, the ALJ's hypothetical did not inaccurately fail to include reference to Plaintiff's alleged depression, claustrophobia, and memory loss. *See Marcum*, 2000 WL 92262 at *6.

Plaintiff's claim that the hypothetical either failed to incorporate or inadequately represented the limitations that she could only sit for one hour, stand for less than one hour, and was severely limited in lifting is unfounded. A hypothetical question must "accurately portray[] [plaintiff's] individual physical . . . impairments." *Varley*, 820 F.2d at 779. The hypothetical question posed to the VE incorporated the limitations that an individual could lift or carry 25 pounds frequently and 50 pounds occasionally; and stand, walk, and sit with normal breaks for a total of six hours in an 8-hour work day. A second hypothetical included a limitation of lifting and carrying 10 pounds frequently and 20 pounds occasionally. By incorporating lifting, standing, and sitting limitations, the ALJ accurately portrayed Plaintiff's physical impairments.

Plaintiff also argues that the hypothetical failed to incorporate the idea that she had to rest 3-4 hours on a daily basis after taking medication, and had to rest during the day for up to three hours. "It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235 (6th Cir. 1993) (citing *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 927-28 (6th Cir. 1987)). The ALJ found that "[t]he claimant's statements concerning the intensity, duration and limiting effects of [Plaintiff's] symptoms are not entirely credible." And, the Court cannot make credibility determinations. *See Bogle*, 998 F.2d at 347.

### C. Consultation Examinations

Plaintiff's claim that her case should be remanded based on the Magistrate's comment that she was "required to undergo consultation examinations" lacks merit. Plaintiff is correct in her assertion that treating physicians' opinions are given controlling weight, but that is only when they are not inconsistent with other substantial evidence. *See* 20 C.F.R. §404.1527(d)(2). However, the Magistrate did not state Plaintiff was *required* to attend consultation examinations. It was simply the Magistrate's opinion that Plaintiff's failure to attend the consultation examinations may have hindered her claim because Plaintiff could not reap the benefit of an analysis of her mental and physical limitations.

Further, Plaintiff's argument that an evidentiary hearing should have been conducted to determine whether the letter to attend the consultation examinations was in Arabic lacks merit. Plaintiff testified at the hearing that she cannot read in either Arabic or English. Tr. 206. Hence, Plaintiff could not read the letter even if it were in Arabic.

### VI. CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation. The Court **GRANTS** Defendant's motion, and **DENIES** Plaintiff's motion.

**IT IS ORDERED.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: September 11, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 11, 2007.

s/Linda Vertriest
Deputy Clerk

---